DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **ZYMIRA LOFLAND,**<br>310 Anacostia Rd, Apt A22<br>Washington, DC 20019<br><br>        Plaintiff,<br><br>    v.<br><br>**WAL-MART STORES EAST, LP**<br>124 West Capitol Avenue, Suite 1900<br>Little Rock, AR 72201; and<br><br>WAL-MART ASSOCIATES, INC.<br>124 West Capitol Avenue, Suite 1900<br>Little Rock, AR 72201; and<br><br>BRIAN BROOKS<br>1112 Eastern Avenue, NE, Apartment 102,<br>Washington, DC 20019<br><br>        Defendants. | Civil Action No. **2018 CA 004478 B**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**(Sex Discrimination and Retaliation in Violation of
The District of Columbia Human Rights Act)**

**COMES NOW** Plaintiff Zymira Lofland, through her attorneys, Correia & Puth, PLLC,

and for her complaint states to this Honorable Court as follows:

### INTRODUCTION

Ms. Lofland, formerly an employee with Wal-Mart Stores East, LP and Wal-Mart

Associates, Inc. (collectively "Walmart"), brings this action against Defendants for sexual

harassment by her supervisor and retaliation by her employer in forcing her to take an unpaid

leave of absence, then a demotion at another store, and ultimately resign.

1

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

While working at Walmart, Ms. Lofland's supervisor, Brian Brooks, subjected Ms. Lofland to constant and persistent sexual advances, comments about her body and appearance, and remarks about sexual acts that Mr. Brooks wanted to perpetrate against Ms. Lofland. Ms. Lofland reported the harassment and expressed her discomfort working in the same environment as Mr. Brooks. The only relief Walmart offered from this hostile environment was pressuring Ms. Lofland to take unpaid leave, and then locking her into an undesirable demotion from which she could obtain no apparent relief despite her repeated attempts, effectively punishing her for asserting her right to be free from sex discrimination.

Ms. Lofland's demotion left her with less pay, a longer commute, and a change from a day to night shift, forcing her to remove her young children from the daycare center that was across the street from her original Walmart store and find alternate, late night care. The working conditions, including her forced demotion, were so intolerable that Ms. Lofland felt compelled to resign.

## PARTIES

1.      Plaintiff Zymira Lofland is an adult female resident of the District of Columbia and at all times relevant hereto was an employee within the meaning of D.C. Code § 2-1401.02(9).

2.      Defendant Wal-Mart Stores East, LP is a limited partnership authorized to do business in the District of Columbia, and at all times relevant hereto was an employer within the meaning of D.C. Code § 2-1401.02(10). Wal-Mart Stores East, LP is a limited partnership consisting of one general partner, WSE Management LLC, and one limited partner, WSE Investment, LLC. Both WSE Management, LLC and WSE Investment, LLC are limited liability companies consisting of a sole member, Wal-Mart Stores East, LLC. Wal-Mart Stores East, LLC

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

is a limited liability company consisting of one member, Wal-Mart Stores, Inc. Wal-Mart Stores, Inc is a corporation incorporated in Delaware with its principal place of business in Bentonville, Arkansas. At all times relevant to this action, Wal-Mart Stores East, LP conducted business in the District of Columbia. Wal-Mart Stores East, LP owns and operates store 3035.

3.      Defendant Wal-Mart Associates, Inc. is a corporation authorized to do business in the District of Columbia, and at all times relevant hereto was an employer within the meaning of D.C. Code §2-1401.02(10). Wal-Mart Associates, Inc. is incorporated in the state of Delaware with its principal place of business in Arkansas.  Wal-Mart Associates, Inc. issued Plaintiff's IRS Form W-2 for income earned in 2017.

4.      Defendant Brian Brooks is an adult male resident of the District of Columbia and was an employer within the meaning of D.C. Code §2-1401.02(10) in his capacity as Ms. Lofland's supervisor.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to D.C. Code § 11-921 and D.C. Code § 2-1403.16.

6.      On February 28, 2018, Ms. Lofland filed a charge of discrimination with the District of Columbia Office of Human Rights.

7.      On June 20, 2018, Ms. Lofland's charge was administratively dismissed, allowing her to she pursue her claims in court.

8.      Venue lies with this Court because all or most of the acts complained of herein occurred in the District of Columbia.

3

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

## FACTS GIVING RISE TO RELIEF

9.     In 2015 Ms. Lofland began working for Defendant, and in the Fall of 2016, Ms.

Lofland became a sales associate in the Sporting Goods Department at Walmart store 3035,

located at 310 Riggs Rd NE, Washington, D.C. 20011.

10.     Ms. Lofland worked the daytime shift, generally from 7 a.m. to 4 p.m. She was

paid $13.50 per hour. Her primary job duties involved restocking shelves and assisting customers

on the sales floor. At that time, Ms. Lofland was living in Hyattsville, Maryland, just four miles

from her place of employment. Her youngest children attended daycare across the street from

Walmart store 3035, so she was able to drop off her children and get to work in approximately

20-25 minutes. Whenever she had car trouble, she was able to take the bus to work.

11.     At all times relevant hereto, Ms. Lofland's work performance met Defendant's

legitimate job expectations.

12.     In late January 2017, her supervisor at the time was promoted, and Mr. Brooks

became her supervisor. Within a week Mr. Brooks told her the store manager, Paul Hill, had

asked him to choose a mentee in his area. He told Ms. Lofland he chose her and it would be a

good idea because she could prove herself worthy of becoming a manager.

13.     Immediately after they began working together, Mr. Brooks began making

unwanted sexual advances towards Ms. Lofland.  Mr. Brooks asked Ms. Lofland what time her

boyfriend got off work. Ms. Lofland replied she was a lesbian. Undeterred, Mr. Brooks asked if

he could come over to her house. She told him no and mentioned she had young children. He

pushed further, asking Ms. Lofland what time her children go to bed. She was shocked and

confused, realizing he was likely asking for sex. She returned to her work, avoiding saying

anything else.

4

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

14.    Mr. Brooks later approached Ms. Lofland and stood very close to her, again asking her questions about coming over when Ms. Lofland's girlfriend was not home, making it clear he wanted sex, and added "we only have like two hours, I'll beat that ass up." Mr. Brooks' aggressiveness scared Ms. Lofland.

15.    Mr. Brooks also bragged to Ms. Lofland about how other women wanted him, including the assistant manager.

16.    Mr. Brooks tried to control Ms. Lofland through the tasks he assigned her. For example, he would scan products from bins in the back room on the middle shelves, leaving Ms. Lofland to scan products from bins only on the top and bottom shelves where she had to bend over or use a ladder as he watched her.

17.    On or around February 13, 2017, Mr. Brooks complained to Ms. Lofland that he was not going to "get any" on Valentine's day because his girlfriend was a rape survivor and was not interested in sex. He then leered at Ms. Lofland and said his girlfriend needed to "get over" her rape because he was "looking at other things." Ms. Lofland responded that she did not want to talk about his personal life.

18.    On another occasion, Mr. Brooks told Ms. Lofland he had recently hurt another woman (not his girlfriend) during anal sex, and then asked Ms. Lofland if she had ever "had anal."

19.    On or around February 14, 2017 Mr. Brooks commented that another coworker "must be a freak" because she was wearing a choker necklace. Ms. Lofland walked away from him.

20.    On or around February 15, 2017, when Ms. Lofland was wearing leggings, Mr. Brooks was constantly standing closely behind her while she worked. She used her lunch break

to go home and change into looser pants to avoid his gaze. When she returned he told her she

shouldn't have changed, and looking at her behind stated, "it looks the same." He continued

leering at Ms. Lofland and making sexual comments.

21.     The same day, Mr. Brooks told Ms. Lofland she should "check out" a customer's

"titties" because the customer was not wearing a bra. Ms. Lofland told Mr. Brooks, "you need to

get up out of my face."

22.     On or around February 16, 2017, Ms. Lofland told her store manager Paul Hill

and the co-manager, Wallis, "Brian's been sexually harassing me." Ms. Rita Lawson, the store

Human Resources (HR) manager, was also present. Ms. Lofland stated that she did not want to

work in the same environment as Mr. Brooks. Mr. Hill told Ms. Lofland she needed to provide a

written statement.

23.     Emotionally distraught from the hostile environment she had been enduring, Ms.

Lofland left work early on February 16 and took the day off on February 17, 2017.

24.     Ms. Lofland emailed her written statement to Mr. Hill on or around February 17,

2017.

25.     On or around February 20, 2017, Ms. Lofland was not at the store but called Mr.

Hill to ask if he had received her statement. He reported he had not, so Ms. Lofland emailed the

statement again.

26.     On or around February 21, 2017, Ms. Lofland emailed her statement to Mr. Hill

for a third time.

27.     On February 23, 2017, Ms. Lofland also reported the sexual harassment through

Walmart's Global Ethics online portal. She stated that for roughly the past month Mr. Brooks

sexually harassed her, making her perform work that requires her to bend over in front of him,

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

repeatedly asking personal questions, propositioning her for sex, and asking her if he can come to her house, even after she had told him to stop. She noted that she had already reported this to her store manager.

28.    In response, several Global Ethics Office employees responded through the online portal, confirming receipt of the complaint, reassuring Ms. Lofland the complaint was being reviewed, informing her that her concern was being investigated and that such an investigation normally takes four to six weeks.

29.    On or around February 28, 2017, Walis (Mr Hill's co-manager) approached Ms. Lofland on the sales floor and told her "no one has your statement." Ms. Lofland replied that she had typed it up and emailed it to Mr. Hill. Walis, seemingly annoyed, responded, "how hard is it to just print it out?"

30.    Ms. Lofland mentioned that she had also made a report through the Global Ethics portal and Wallis told her she "shouldn't have done that" because it was "going over Paul [Hill]'s head."

31.    Ms. Lofland then went to Mr. Hill to see if he had received her emailed statement and if he could print it out. Mr. Hill said he did not have it.

32.    Ms. Lofland then went to Ms. Lawson and asked if the written statement she had been trying to email to Mr. Hill was still needed, in light of her report through Global Ethics. Ms. Lawson told her she would look into it.

33.    On or around March 2, 2017, Ms. Lawson told Ms. Lofland they did need her written statement and no one had it. Ms. Lofland used her lunch break to go print out the statement and handed it to Ms. Lawson.

34.     Around this time, Ms. Lofland called Wal-Mart's Open Door Helpline to see if there was someone other than Ms. Lawson with whom she could discuss her report of harassment, concerned that her report was not being adequately addressed. The Open Door representative with whom she spoke gave her the phone number for Ronald Ealey, the market HR manager. Ms. Lofland then called Mr. Ealey to express her concern that her report of harassment was not being handled properly. Mr. Ealey arranged for himself, Ms. Lawson, and Ms. Lofland to have a meeting on March 6, 2017.

35.     On March 3, 2017, Ms. Lofland again sent a message through the online portal to the Global Ethics Office. She informed them she had missed some work to avoid the hostile environment and, requested transfer to a different store and urgent investigation to avoid receiving disciplinary action as a result of exceeding her allowable leave.

36.     On March 5, 2017, when Ms. Lofland checked her schedule for the upcoming week, she was not scheduled for any shifts. She nonetheless went to work the following day to attend her planned meeting with Mr. Ealey and Ms. Lawson.

37.     At this meeting, Ms. Lofland told Ms. Lawson and Mr. Ealey that she did not want to work in the same environment as Mr. Brooks while Walmart conducted its investigation. Mr. Ealey encouraged Ms. Lofland to use her paid time off ("PTO") to stay home while he looked for another store where Ms. Lofland could work at temporarily during the course of the investigation.

38.     Ms. Lofland had no accrued PTO at that time and was concerned about being terminated for violating Walmart's attendance policy. Ms. Lofland's only available leave was 6 weeks of unpaid "baby-bonding leave" she had not used following a recent pregnancy. Because Mr. Ealey was encouraging Ms. Lofland to stay home and she had no means of doing so without

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

risking her job, Ms. Lofland was forced to use her remaining baby-bonding leave that she would not have otherwise used in order to avoid Mr. Brooks.

39.     On March 7, Ms. Lofland spoke with Mr. Ealey to let him know that she had entered into the system that she would be taking her baby-bonding leave because she did not have any PTO. Mr. Ealey told her that "might complicate things" in terms of finding her a position at another store. Ms. Lofland asked if she should rescind her request for leave in the system but Mr. Ealey told her no, "I'll take care of it" and that he would have Ms. Lawson call her.

40.     On March 15, 2017, Ms. Lofland received a message from Global Ethics through the online portal that informed her the investigation of her complaint had been completed but provided no information about what corrective actions Walmart intended to take. Ms. Lofland had not yet heard from Ms. Lawson.

41.     Ms. Lofland called Mr. Ealey on or around March 15, 2017, after receiving the message from Global Ethics to get more information about the results of the investigation and what actions would be taken to prevent further harassment. Ms. Lofland wanted to return to work if the hostile environment had been addressed. Mr. Ealey told Ms. Lofland that she should talk to Ms. Lawson when her six weeks of unpaid leave had been exhausted and she returned to work on April 3, 2017.

42.     Ms. Lofland followed up by email on March 27, 2017, noting that she would prefer to be working than on unpaid leave, but that no one had provided her any assurance that the hostile environment at work had been dealt with. She noted that it felt unfair that she was asked by Walmart to take unpaid leave while Mr. Brooks continued to work at the store.

9

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

43.      In response to Ms. Lofland's email, he and Ms. Lawson informed Ms. Lofland by telephone conference that Walmart expected her to return on April 3, 2017 to the same store where Mr. Brooks continued to work. They informed her that Walmart would not be taking any action to move, discipline, or even separate Mr. Brooks from her because it had found "no evidence" of Mr. Brooks' misconduct.

44.      Walmart performed an inadequate investigation, ignoring information in its possession or available to it regarding Mr. Brooks that would have corroborated Ms. Lofland's report that Mr. Brooks behaved in a sexually predatory, hostile, and intimidating manner.

45.      On April 3, 2017, Ms. Lofland reported to store 3035 as she was told to by Ms. Lawson and Mr. Ealey, even though she had not been put on the schedule for any shifts. While there she met with Ms. Lawson and Mr. Ealey and again raised her desire to transfer to another store if nothing was going to be done to separate Mr. Brooks from her work environment. Ms. Lofland and Mr. Ealey noted some available positions at other stores, but the positions offered were for less pay and were for early morning hours (4am to 1pm) or late evening hours (2pm to 11pm). Because Ms. Lofland's current childcare arrangements would not work with those hours and because she did not want to accept less pay, she asked if there were other options. Ms. Lawson and Mr. Ealey told Ms. Lofland she would be on the payroll for the week while she looked for other positions.

46.      In order to apply for open positions, Ms. Lofland had to come to store 3035 to access the Walmart intranet system and its "Career Preference Dashboard."

47.      On at least one occasion during that week, Ms. Lofland had to walk by Mr. Brooks in store 3035 and felt scared and intimidated by the way he leered at her as she walked past him.

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

48.     Ms. Lofland saw two open sporting goods sales associate positions on the Career Preference Dashboard, one at the Georgia Avenue store and one at the Bowie Maryland store. She applied to both but was not offered either position.

49.     As the end of the week neared, Walmart had still not offered Ms. Lofland a comparable position with daytime hours and her same rate of pay. There were two open positions at Walmart store 1893 in Bowie, MD, but they were both demotions with less pay and less desirable hours. Ms. Lofland texted Ms. Lawson and asked if there was anything HR could do so she could get paid her current rate of pay if she agreed to take a position at the Bowie store, or if there were other possible solutions so she did not have to lose pay. Ms. Lawson responded "There is nothing we can do about pay. It's all about the position you take." Ms. Lofland then replied "So my only two options are to come back to the Fort Totten store and have to work in the same environment as Bryan or accept a lower-paying position?"

50.     Ms. Lawson did not reply to Ms. Lofland's text but instead called Ms. Lofland. Ms. Lawson agreed with Ms. Lofland that she should not have to accept a lower rate of pay but did not offer any solutions to the problem.

51.     On April 7, 2017, Walmart demoted Ms. Lofland to a "CAP team associate" position at Walmart store 1893, located at 3300 Crain Highway, Bowie, MD 20716. Ms. Lofland could not afford to lose her source of income and was forced to take the demotion to work free from Mr. Brooks' harassment. See Exhibit 1.

52.     Ms. Lofland emailed Ms. Lawson and Mr. Ealey about the demotion, requesting Walmart to transfer her to the first available position with the same hourly pay as the sales associate position she had been forced to leave. Mr. Ealey and Ms. Lawson never responded.

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

53.     For this demotion, Ms. Lofland was required to work a nighttime shift from 2 PM to 11 PM instead of her previous daytime shift, which required Ms. Lofland to move her two young children to a different daycare center that provided late-night care The late-night daycare center was located in Southeast D.C., which meant that every day she worked, Ms. Lofland had to drive from Hyattsville to Southeast, then to Bowie and at the end of her shift back to Southeast before returning home to Hyattsville. The total commute each way was approximately an hour. On a few days when Ms. Lofland was unable to use her car, there was no way to commute to pick up her children and then come home because there was not a late-night public transportation option, so Ms. Lofland missed work.

54.     Ms. Lofland discovered after her demotion that she was no longer able to apply for Walmart jobs at the same level as her previous sales associate position because Walmart's intranet system blocked her from applying to jobs classified at a higher level than her current CAP associate position.

55.     On May 5, 2017, Ms. Lofland sent a written statement to the regional HR manager, Tracy Ford, summarizing the harassment at Walmart and the deficient response to her complaints. She again requested a position with her previous hourly wage and daytime schedule.

56.     Ms. Ford refused to acknowledge receipt of the statement. Ms. Lofland resent the statement twice to Ms. Ford.

57.     Ms. Ford repeatedly stated in emails to Ms. Lofland that she had failed to provide any information about the nature of her complaint and was nonresponsive when Ms. Lofland asked Ms. Ford directly if she had received the statement.

12

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

58.     Upon information and belief, shortly after Ms. Lofland initially contacted Ms. Ford, Mr. Brooks was terminated from employment at Walmart because other female employees had complained about his sexual harassment of them.

59.     On May 11, 2017, Ms. Lofland emailed Mr. Ealey and Ms. Lawson requesting return to a position at store 3035 with her previous hourly wage and daytime schedule. Mr. Ealey and Ms. Lawson did not respond to that email.

60.     On May 30, 2017, despite the additional corroborating evidence that Mr. Brooks' sexually harassed female employees, Ms. Ford told Ms. Lofland that Walmart determined her complaint against Mr. Brooks was unsubstantiated, and that accordingly there was nothing it could do about her "choice" to take a leave of absence and move to a lower-paying position.

61.     The adjustment to late-night daycare was very difficult on Ms. Lofland's children. She eventually reduced her hours so that she could pick-up her children by 9pm instead of midnight. The pay from her limited hours made it financially infeasible to continue working at Walmart and putting her children in daycare.

62.     Ms. Lofland's working conditions became so intolerable that a reasonable person in Ms. Lofland's position would feel compelled to resign.

63.     In June 2017 Ms. Lofland resigned her position at Walmart.

64.     Defendants took several adverse actions against Ms. Lofland, including requiring her to take unpaid leave, demoting her, refusing to reinstate her to her original position even after Mr. Brooks was no longer in the workplace, and constructive discharge.

## COUNT I
### Discrimination in Violation of the District of Columbia Human Rights Act,
### D.C. Code § 2-1402.11

65.     Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-64 of this Complaint as if set out here in full.

13

66.     The sexually crude, suggestive, unwelcome, and hostile behavior to which Ms.
Lofland was subjected was severe or pervasive, affected the terms, conditions, or privileges of
her employment, and created a hostile work environment.

67.     The acts committed by Defendants were committed wholly or partially because of
Plaintiff's sex, female.

68.     Ms. Lofland subjectively perceived Mr. Brooks' treatment to be inappropriate,
hostile, and offensive; and the treatment to which she was subjected was inappropriate, hostile,
and offensive.

69.     Defendants' conduct was malicious, wanton, reckless, and done with willful
disregard for Ms. Lofland's rights.

70.     Defendants are liable for the creation and maintenance of the sexually hostile
work environment.

71.     Defendants took several adverse actions against Ms. Lofland, including
constructive discharge.

72.     As a direct and proximate result of Defendant's unlawful acts, Ms. Lofland
suffered and continues to suffer lost earnings, embarrassment, humiliation, pain, suffering,
mental anguish, mental distress, indignity, and loss of enjoyment of life.

## COUNT II
**Retaliation in Violation of the D.C. Human Rights Act, D.C. Code § 2-1402.61**

73.     Plaintiff incorporates by reference and re-alleges paragraphs 1-64 above.

74.     Plaintiff opposed Defendant's discriminatory conduct by refusing Mr. Brooks'
sexual advances and reporting Mr. Brooks' behavior to the store manager, the Global Ethics
portal, the store HR manager, the market HR manager, and the regional HR manager.

75.     Plaintiff engaged in legally protected activity when she opposed Mr. Brooks' conduct by refusing Mr. Brooks' sexual advances and reporting Mr. Brooks' behavior to the store manager, the Global Ethics portal, the store HR manager, the market HR manager, and the regional HR manager.

76.     Defendant retaliated against Plaintiff by forcing her to use unpaid leave and accept a demotion at another store to maintain her legally protected opposition to discrimination.

77.     Defendant retaliated against Plaintiff by ignoring her requests to return to store 3035, and by refusing to undo the demotion, even after it received additional complaints about Mr. Brooks' discriminatory behavior.

78.     Defendants took several adverse actions against Ms. Lofland after she opposed discriminatory conduct, including constructive discharge.

79.     As a direct and proximate cause of Defendant's retaliation against Plaintiff, she suffered and continues to suffer embarrassment, humiliation, pain, suffering, mental anguish, mental distress, indignity, and loss of enjoyment of life.

80.     Defendant's conduct was malicious, wanton, reckless, and done with willful disregard for Plaintiff's rights.

## PRAYER FOR RELIEF

**WHEREFORE**, the premises considered, Plaintiff respectfully prays that this Honorable Court:

81.     Enter judgment in favor of Plaintiff Zymira Lofland, jointly and severally against Defendants;

82.     Award Plaintiff compensatory damages and all other damages available to her under the law;

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

83.    Award Plaintiff her court costs and expenses, including reasonable attorneys'

fees;

84.    Award Plaintiff pre-judgment interest and post-judgment interest;

85.    Award Plaintiff punitive damages;

86.    Declare Defendants' conduct in violation of the District of Columbia Human

Rights Act, D.C. Code §§ 2-1402.11, 2-1402.61;

87.    Order injunctive relief, including but not limited to proper training for the

Walmart Defendants' agents and supervisors, and the creation of proper anti-discrimination and

harassment policies;

88.    Grant such other relief as this Court deems just and proper.


June 22, 2018                          Respectfully submitted,


                                       */s/ Linda M. Correia*
                                       Linda M. Correia (D.C. Bar No. 435027)
                                       Roshni C. Shikari (D.C. Bar No. 1045298)
                                       Correia & Puth, PLLC
                                       1400 16th Street NW, Suite 450
                                       Washington, DC 20036
                                       Tel: (202) 602-6500
                                       lcorreia@correiaputh.com
                                       rshikari@correiaputh.com

## JURY DEMAND

Plaintiff demands a trial by jury on all issues contained herein.

/s/ Linda M. Correia
Linda M. Correia (D.C. Bar No. 435027)
Roshni C. Shikari (D.C. Bar No. 1045298)
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington, DC 20036
Tel: (202) 602-6500
lcorreia@correiaputh.com
rshikari@correiaputh.com

DocuSign Envelope ID: DDA105FA-35B4-434C-9495-02CCD971D4EA

## VERIFICATION

I, Zymira Lofland, declare under penalty of perjury that I have read the foregoing Complaint and that it is true to the best of my personal knowledge.

_____6/22/2018_____

Date

*Zymira Lofland*
DocuSigned by:
21BC9398D9A843E...

]land

* View Job Offer & Approve OR

## Job Offer Details

| Breakdown | Current Position Information | New Position Information |
|---|---|---|
| Facility | 3305 | 3305 |
| Position / Title | N/A | N/A |
| Job Code / Title | 13-201 [SALES ASSOCIATE] | [Job 430 [CAPITAL ASSOCIATE]] |
| Position Status | Full Time | Full Time |
| Pay Structure | 4 Level | 4 Level |
| Scheduled Start Date | N/A | 04/07/2017 |
| Grade Level | B | A |
| Position Equivalency | 4 | 3 |
| Type Of Movement | N/A | DEMOTION |
| Base Pay Rate | $13.50 | $12.83 |
| Base Pay | $13.50 | $11.83 |
| Additional Pay | $0.00 | $0.00 |
| Rate of Pay | $13.50 | $12.83 |

<< Back

HIDE Overview                                  Withdraw / Disposition



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Zymira Lofland
_____

                                                    Plaintiff
                        vs.

                                                                Case Number  __2018 CA 004478 B__

Wal-Mart Associates, Inc.
_____

                                                   Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Linda M. Correia
_____          _Clerk of the Court_
Name of Plaintiff's Attorney

Correia & Puth, PLLC                                By _____
Address                                                             Deputy Clerk
  1400 16th Street NW, Suite 450, Washington, DC 20036

202-602-6500                                            Date    **06/25/2018**
_____
Telephone
如需翻译，请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오       የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

                        See reverse side for Spanish translation
                        Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Zymira Lofland

|  |  |
|---|---|
| | Plaintiff |

vs.

Case Number **2018 CA 004478 B**

Wal-Mart Stores East, LP

|  |  |
|---|---|
| | Defendant |

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Linda M. Correia
_____
Name of Plaintiff's Attorney

Correia & Puth, PLLC
_____
Address

1400 16th Street NW, Suite 450, Washington, DC 20036

202-602-6500
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date **06/25/2018**

如需翻译, 请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.        ᎠᎹᎾᎩᎾ ᎠᎾᎧᏏᎯ ᎠᎪᎧᏣᏣ (202) 879-4828  ᎠᎾᏐᎢ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

Filed
D.C. Superior Court
06/28/2018 16:53PM
Clerk of the Court

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Zymira Lofland

Case Number: **2018 CA 004478 B**

vs

Date: _____

Wal-Mart Stores East, LP, Wal-Mart Associates, Inc.,
and Brian Brooks

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*   Linda Correia | Relationship to Lawsuit |
| Firm Name:   Correia & Puth, PLLC | ☒ Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.:        Six digit Unified Bar No.:<br>202-602-6500             435027 | ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury      ☐ 6 Person Jury      ☐ 12 Person Jury
Demand: $ _____        Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: _____        Judge: _____        Calendar #: _____

Case No.: _____        Judge: _____        Calendar#: _____

---

NATURE OF SUIT:      *(Check One Box Only)*

**A. CONTRACTS**                                    **COLLECTION CASES**

☐ 01 Breach of Contract            ☐ 14 Under $25,000 Pltf. Grants Consent      ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty            ☐ 17 OVER $25,000 Pltf. Grants Consent       ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument         ☐ 27 Insurance/Subrogation                   ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                  Over $25,000 Pltf. Grants Consent              Over $25,000 Consent Denied
☒ 13 Employment Discrimination     ☐ 07 Insurance/Subrogation                   ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees             Under $25,000 Pltf. Grants Consent              Under $25,000 Consent Denied
                                   ☐ 28 Motion to Confirm Arbitration
                                       Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile              ☐ 03 Destruction of Private Property      ☐ 05 Trespass
☐ 02 Conversion              ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process             ☐ 10 Invasion of Privacy             ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection      ☐ 11 Libel and Slander                   Not Malpractice)
☐ 03 Assault and Battery          ☐ 12 Malicious Interference          ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury  ☐ 13 Malicious Prosecution          ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation)   ☐ 14 Malpractice Legal              ☐ 20 Friendly Suit
☐ 06 False Accusation             ☐ 15 Malpractice Medical (Including Wrongful Death)  ☐ 21 Asbestos
☐ 07 False Arrest                 ☐ 16 Negligence- (Not Automobile,   ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                            Not Malpractice)                ☐ 23 Tobacco
                                                                      ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability
- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

## II.

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

## D. REAL PROPERTY

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_/s/ Linda M. Correia_

Attorney's Signature

June 21, 2018

Date



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

ZYMIRA LOFLAND
Vs.                                                    C.A. No.       2018 CA 004478 B
WAL-MART STORES EAST, LP et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge NEAL E KRAVITZ
Date:   June 25, 2018
Initial Conference: 9:00 am, Friday, September 21, 2018
Location:   Courtroom 100
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

CAIO-60

 CT Corporation

**Service of Process Transmittal**
07/16/2018
CT Log Number 533710104

TO:     Kim Lundy Service of Process, Legal Support Supervisor
        Walmart Inc.
        702 SW 8th St, MS#0215
        Bentonville, AR 72716-6209

RE:     **Process Served in District of Columbia**

FOR:    Wal-Mart Associates, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Lofland Zymira, Pltf. vs. Wal-Mart Stores East, LP, et al., Dfts. // To: Wal-Mart Associates, Inc. |
| **DOCUMENT(S) SERVED:** | Attachment(s), Letter(s), Summons, Information Sheet(s), Complaint, Jury Demand, Verification(s), Initial Order and Addendum, Interrogatories, Certificate(s), Requests |
| **COURT/AGENCY:** | Superior Court of the District of Columbia, DC
Case # 2018CA004478B |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 07/16/2018 postmarked on 07/16/2018 |
| **JURISDICTION SERVED :** | District of Columbia |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Linda M. Correia
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington, DC 20036
202-602-6500 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/18/2018, Expected Purge Date: 07/23/2018

Image SOP

Email Notification, Kim Lundy Service of Process  ctlawsuits@walmartlegal.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1015 15th St NW Ste 1000
Washington, DC 20005-2621 |
| **TELEPHONE:** | 202-572-3133 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **CT Corporation**

**Service of Process
Transmittal**
07/16/2018
CT Log Number 533703722

| | |
|---|---|
| **TO:** | Kim Lundy Service of Process, Legal Support Supervisor<br>Walmart Inc.<br>702 SW 8th St, MS#0215<br>Bentonville, AR 72716-6209 |
| **RE:** | **Process Served in District of Columbia** |
| **FOR:** | Wal-Mart Stores East, LP  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Lofland Zymira, Pltf. vs. Wal-Mart Stores East, LP, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter(s), Summons, Information Sheet(s), Complaint, Jury Demand, Verification(s), Attachment(s), Initial Order and Addendum |
| **COURT/AGENCY:** | Superior Court of the District of Columbia, DC<br>Case # 2018CA004478B |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 07/16/2018 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | District of Columbia |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Linda M. Correia<br>Correia & Puth, PLLC<br>1400 16th Street NW, Suite 450<br>Washington, DC 20036<br>202-602-6500 |
| **ACTION ITEMS:** | CT will retain the current log<br><br>Image SOP<br><br>Email Notification,  Kim Lundy Service of Process  ctlawsuits@walmartlegal.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>1015 15th St NW Ste 1000<br>Washington, DC 20005-2621<br>202-572-3133 |

Page 1 of  1 / AP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| ZYMIRA LOFLAND,               ) | |
|      ) | |
| Plaintiff,          ) | |
|      ) | |
| v.                    ) | Civil Action No. 2018-CA-004478-B |
|      ) | The Honorable Neal E. Kravitz |
| WAL-MART STORES EAST, LP,    ) | |
|      ) | |
| WAL-MART ASSOCIATES, INC.,   ) | |
|      ) | |
| and           ) | |
|      ) | |
| BRIAN BROOKS,          ) | |
|      ) | |
| Defendants.        ) | |

## PLAINTIFF LOFLAND'S FIRST SET OF INTERROGATORIES

To:    Wal-Mart Stores East, LP and Wal-Mart Associates, Inc.
      c/o CT Corporation System
      1015 15th St NW, Suite 1000
      Washington, DC 20005

## INSTRUCTIONS

The following interrogatories are propounded pursuant to Rule 33 of the D.C. Superior

Court Rules of Civil Procedure. Each interrogatory must be answered fully, under oath, and in

writing within forty-five (45) days. If you object to any interrogatory, you must state the grounds

for your objection with specificity. If you answer any interrogatory by referring to business

records pursuant to Rule 33(d), you must specify the records that must be reviewed, in sufficient

detail to enable Plaintiff to locate and identify them as readily as Defendant could. To the extent

that Defendant refers to documents in lieu of a response, Plaintiff requests that the documents be produced in conformance with the instructions in Plaintiff's Request for Production of Documents served herewith. These Interrogatories are continuing in character, requiring you to provide promptly additional or updated information when such information becomes known to you.

**Unless otherwise indicated, the relevant time period for each request shall be January 1, 2015 to the present.**

As used herein, the following definitions apply to these interrogatories:

"Defendant", "you", "your," or "Walmart" refers to Wal-mart Stores East, LP and Wal-Mart Associates, Inc. including the employees, former employees, agents, representatives, and any predecessors in interest of both entities.

"Identify"

  o   When referring to natural persons, means to give the person's: (i) full name; (ii) present or last known residence and business address and telephone number; (iii) present or last known place of employment; (iv) present or last known job title; (v) present or last known email address; and (vi) relationship, if any, to the Plaintiff or Defendant(s). Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

  o   When referring to a communication, means to give (i) the date of the communication (ii) the nature and substance of the communication (iii) how the communication was transmitted, whether it was by email, telephone, in-person, regular mail, or some other means, (iv) the persons who made the communication,

2

(v) the persons to whom the communication was made, and (vi) any other persons present for or copied on the communication.

## INTERROGATORIES

1. Identify each person with knowledge of the facts asserted in Plaintiff's Complaint or your defenses and affirmative defenses, and describe the substance of each person's knowledge.

2. Identify each witness whom you intend to call at trial in this matter

3. Identify each person you may use at trial to present expert testimony and for each such witness provide the following information:

 a. a complete statement of all opinions the witness will express and the basis and reasons for them;

 b. the facts or data considered by the witness in forming them;

 c. any exhibits that will be used to summarize or support them;

 d. the witness's qualifications, including a list of all publications authored in the previous 10 years;

 e. a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

 f. a statement of the compensation to be paid for the study and testimony in the case.

4. For each interrogatory, separately identify each person who prepared or assisted in preparation of the response, and state how that person assisted in the preparation of each response.

5.      For each affirmative defense stated in your Answer or any subsequent amendment
to your Answer, please state separately all facts that you contend support that affirmative
defense.

6.      As it applies to any data concerning any Walmart online portal used by Walmart
employees (including but not limited to Walmart's Global Ethics Portal, Walmart's Career
Preference Dashboard, the Walmart Wire, and WalmartOne.com), Walmart stores in the region
for which Tracey Ford is the Regional Human Resources Director, Zymira Lofland, Brian
Brooks, Rita Lawson, Ronald Ealey, Tracy Ford, Wallis, Paul Hill, and any person identified in
the interrogatories, describe the practices, policies, and procedures concerning data retention and
data backups for all of Defendant's computer systems and email systems, the hardware and
software used to create, manage, or store data backups or used to facilitate the deletion of data,
and list all the information scheduled for deletion.

7.      As it applies to employees who worked or work at Walmart store 3035, identify all
actions taken by Defendant for the purpose of informing Defendant's employees about
Defendant's anti-discrimination or harassment policies.

8.      Identify each and every lawsuit, federal administrative agency complaint, or state
administrative agency complaint concerning allegations of sex discrimination, harassment, or
retaliation occurring at Walmart stores, or perpetrated by or against employees of Walmart stores,
in the region for which Tracy Ford is the Regional Human Resources Director.

9.      For each complaint concerning sex discrimination, harassment or retaliation made
by any current or former employee of stores in the region for which Tracey Ford is the Regional
Human Resources Director  (whether formal or informal, written or oral), identify the nature of
the complaint, the person(s) making the complaint, the person(s) who received the complaint, the

4

person(s) whose conduct was the subject of the complaint, and any disciplinary or corrective actions taken in response to the complaint.

10.    For each complaint made by any current or former employee of Defendant (whether formal or informal, written or oral) concerning the conduct of Brian Brooks, identify the nature of the complaint, the person(s) making the complaint, the person(s) who received the complaint, the person(s) whose conduct was the subject of the complaint, and any disciplinary or corrective actions taken in response to the complaint.

11.    Identify each person whose schedule and Walmart store overlapped with the schedule and store of Zymira Lofland or Brian Brooks.

12.    Identify each person who Brian Brooks supervised.

13.    Identify any information obtained from a background check of Brian Brooks completed at any time before July 5, 2017.

14.    Identify each person involved in the investigation of Zymira Lofland's complaints of sex discrimination and harassment and describe their involvement in that investigation.

15.    Identify each person involved in the decisions to find Zymira Lofland's report of sexual harassment was unsubstantiated and to not take action against Brian Brooks based on Zymira Lofland's complaint and describe their involvement in that decision.

16.    Identify any portable telephone, pager, or computer, including iPads or other tablets, provided by Defendant to Brian Brooks, Ronald Ealey, Rita Lawson, Paul Hill, Wallis, and Tracey Ford, or any such device used by these individuals for work-related communications.

Respectfully submitted,

CORREIA & PUTH, PLLC

5

**/s/ Linda M. Correia**
Linda M. Correia (D.C. Bar No. 435027)
Roshni C. Shikari (D.C. Bar No. 1045298)
1400 16th Street NW, Suite 450
Washington, DC 20036
Tel: (202) 602-6500
lcorreia@correiaputh.com
rshikari@correiaputh.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July 2018, a true and accurate copy of the

foregoing Plaintiff Lofland's First Set of Interrogatories was served by certified mail to:

Wal-Mart Stores East, LP and Wal-Mart Associates, Inc.
c/o CT Corporation System
1015 15th St NW, Suite 1000
Washington, DC 20005

Brian Brooks
1112 Eastern Avenue, NE, Apartment 102
Washington, DC 20019

*/s/ Linda M. Correia*

7

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| ZYMIRA LOFLAND,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES EAST, LP,<br><br>WAL-MART ASSOCIATES, INC.,<br><br>and<br><br>BRIAN BROOKS,<br><br>Defendants. | Civil Action No. 2018-CA-004478-B<br>The Honorable Neal E. Kravitz |

## PLAINTIFF LOFLAND'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

To:   Wal-Mart Stores East, LP and Wal-Mart Associates, Inc.
      c/o Kevin M. Kraham
      815 Connecticut Ave NW, Suite 400
      Washington, DC 20006

### INSTRUCTIONS

The following requests for production are propounded pursuant to Rule 34 of the D.C. Superior Court Rules of Civil Procedure.  Plaintiff Zymira Lofland requests that Wal-Mart Stores East, LP and Wal-Mart Associates, Inc. (collectively "Defendant") produce and permit inspection and copying of the documents identified below, at the law offices of Correia & Puth, PLLC, 1600 14th Street NW, Suite 450, Washington DC 20036, on any normal business day between the hours of 9:00 a.m. and 5:00 p.m., within forty-five (45) days of service of these requests.  In addition, Plaintiff requests that Defendant make available for inspection, at a mutually convenient time, all original documents responsive to these document requests.

All Electronically Stored Information ("ESI") produced in response to these requests must be preserved and produced in its native electronic format, meaning it should be produced in the same format in which the information was customarily created, used and stored in the ordinary course of business.  For example, for Word documents, .doc and .docx, for Excel spreadsheets, .xls and .xlsx, for PowerPoint Presentations, .ppt and .pptx, for Microsoft Access Databases, .mdb and .accdb, for WordPerfect documents, .WPD, for Adobe Acrobat Documents, .PDF, for images, .JPG, .JPEG and .PNG. Data stored in any databases should be produced in its native electronic format wherever possible, and otherwise in the form(s) in which the information is ordinarily maintained or in a reasonably usable form, taking into account the need to produce reasonably accessible metadata that will enable Plaintiff to have the same ability to access, search, and display the information as Defendant. All ESI should also be preserved in its native electronic format as necessary for forensic examination during the pendency of the case.

For All ESI produced in a native electronic format, please also produce a corresponding searchable .pdf document. All non-electronic documents or documents requiring redaction should also be produced in searchable .pdf format.

If, in responding to these requests, Defendant encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

Unless otherwise specifically noted, all documents under the control of Defendant are requested, whether the documents were generated by Defendant, its predecessors in interest, employees, former employees, agents, representatives or any other person or entity.

If any requested document is known by Defendant to have existed, but no longer exists or is no longer in Defendant's possession, custody, or control, Defendant is requested to identify the

last known custodian thereof and state the date upon which it was lost, destroyed, or otherwise became unavailable. If the document still exists but is unavailable to Defendant, Defendant is requested to identify its present custodian and location.

**Unless otherwise indicated, and with the exception of requests 1 and 12, the relevant time period for each request shall be January 1, 2015 to the present.**

Responses should be grouped and numbered in accord with the numbers of the individual requests as set forth below.

Any information or documents withheld must be identified as required by D.C. Superior Court Rule 26(b)(5). For each item withheld, please provide the following in the objection for the document:

1. the reason asserted for withholding the document, whether a claim of privilege, an objection, or pursuant to the work product doctrine;

2. the type of document (e.g., letter or memorandum);

3. the general subject matter of the document;

4. the date of the document;

5. the author of the document;

6. the addressees of the document;

7. whether any transmitting, attached, or subsidiary ("parent-child") documents exist and whether those documents were produced or withheld;

8. any other recipients of the document; and

9. where not apparent, the relationship of the author, addressees, and recipients to each.

When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

These requests are continuing in nature and require an immediate supplemental response if any additional documents are discovered, located, identified or obtained after you complete production of documents responsive to these requests.

As used herein, the following definitions apply to these requests for the production of documents:

"Concerning" means referring to, describing, evidencing, or constituting.

"Defendant", "you", "your," or "Walmart" refers to Wal-mart Stores East, LP and Wal-Mart Associates, Inc. including the employees, former employees, agents, representatives, and any predecessors in interest of both entities.

"Document" or "documents" means any writings, drawings, graphs, charts, photographs, sound recording, images, electronically stored information (ESI), data, or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form, which is in your possession, custody, or control. The terms encompass individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically, or magnetically, or as a record

4

within a database, archive, or container file. The terms should be read broadly to include email, messaging, word processed documents, digital presentations, spreadsheets, and database content. For purposes of these requests, two or more copies of a document bearing divergent hash values or other notations shall be treated as separate documents.

"Employee," "employees," or "staff" refers to any current or former employee of Defendant or any contractor of Defendant.

## REQUESTS

1.     Documents concerning the hiring of Zymira Lofland and Brian Brooks, including any background checks performed.

2.     Documents concerning Zymira Lofland's compensation and benefits.

3.     Documents contained in all personnel or employment files of Zymira Lofland, Brian Brooks, Rita Lawson, Ronald Ealey, Tracy Ford, Paul Hill, and Wallis, including any official or unofficial files concerning his or her employment.

4.     Documents provided to Zymira Lofland or received from Zymira Lofland.

5.     Documents concerning any complaint, oral or written, formal or informal, made by or about Zymira Lofland.

6.     Documents concerning Zymira Lofland's complaint of sex discrimination and harassment.

7.     Documents to, from, or received by Rita Lawson, Ronald Ealey, Tracy Ford, Wallis, or Paul Hill concerning sex discrimination, harassment, or retaliation.

8.     Documents concerning any complaint, formal or informal, oral or written, of retaliation, sex discrimination, or harassment, made by or about any employee in any Walmart

5

store in the region for which Tracey Ford is the Regional Human Resources Director, or made about any conduct occurring in any such store.

9.      Documents concerning any allegation of wrongdoing or complaint against or involving Brian Brooks, Rita Lawson, Ronald Ealey, Tracy Ford, Paul Hill, Zymira Lofland, or Wallis, whether formal or informal, oral or written.

10.     Documents concerning Defendant's investigation into each and every complaint described in requests 5-9.

11.     Documents reflecting the organizational structure, organizational charts, and staffing lists of employees who worked at store 3035 and employees in Walmart's Human Resources department who were in any way involved in evaluating or investigating each and every complaint described in requests 5-9.

12.     Documents concerning any action or recommendation by Rita Lawson, Ronald Ealey, Tracy Ford, Wallis, or Paul Hill to take disciplinary action against any employee, including but not limited to formal or informal discipline, warning, demotion, suspension, or termination.

13.     Documents to, from or concerning Brian Brooks that refer directly or indirectly in any manner to conduct that is sexual in nature.

14.     Documents concerning any actual or proposed discipline, formal or informal, written or oral, of Brian Brooks.

15.     Documents concerning the job duties, authority, and responsibilities of Brian Brooks, Rita Lawson, Ronald Ealey, Tracy Ford, Wallis, and Paul Hill.

16.     Documents concerning the job performance of Zymira Lofland, Brian Brooks, Rita Lawson, Ronald Ealey, Tracy Ford, Wallis, and Paul Hill.

6

17.     Documents concerning Zymira Lofland or Brian Brooks sent to, from, or received by Defendant's Global Ethics Portal, Rita Lawson, Ronald Ealey, Tracy Ford, Wallis, and Paul Hill.

18.     Documents concerning Defendant's Global Ethics Portal practices, policies, and procedures.

19.     Documents concerning Defendants practices, policies, and procedures for investigating and responding to reports of sexual harassment, sex discrimination, or retaliation.

20.     Documents concerning mentorship or training of any type provided by Defendant to Brian Brooks and Zymira Lofland.

21.     Documents concerning training or information given to Rita Lawson, Ronald Ealey, Tracy Ford, Wallis, and Paul Hill, regarding discrimination, retaliation, or sexual harassment in the workplace.

22.     Documents concerning the job descriptions of the positions held by Zymira Lofland and Brian Brooks.

23.     Documents concerning Defendant's anti-discrimination, retaliation, or harassment policy.

24.     Documents concerning the distribution of Defendant's anti-discrimination or harassment policy to employees who worked at the Walmart store 3035.

25.     Documents concerning Defendant's practices, policies, and procedures for requesting a change in schedule, task assignment, store, or position for employees in Zymira Lofland's position at Walmart Store 3035.

26.     Documents concerning practices, policies, and procedures for the hiring, discipline, or termination of staff that apply to employees in holding the same or equivalent positions to those held by Zymira Lofland and Brian Brooks.

27.     Documents concerning any actions taken by Ron Ealey or Rita Lawson to find available positions outside of store 3035 for Zymira Lofland.

28.     Documents reflecting any activity on any Walmart online portal used by Walmart employees (including but not limited to Walmart's Global Ethics Portal, Walmart's Career Preference Dashboard, the Walmart Wire, and WalmartOne.com), performed while logged-in under a username or login that was associated with Zymira Lofland, or that relates in any way to Zymira Lofland, from January through July 2017.

29.     Documents identifying the partners of Wal-Mart Stores East, LP and the membership or partners of any such partners.

30.     Any contracts, subcontracts, or memorandums of understanding that govern the relationship between Wal-Mart Stores East, LP and Walmart Associates, Inc as it relates to human resources and staffing.

31.     Documents concerning communications between Defendant (or anyone acting on its behalf) and any expert witness Defendants may call at trial.  Defendant's response should include, but not be limited to, documents provided to, received from or prepared by each person whom Defendant may call to provide expert testimony in this action, any reports and drafts of reports prepared by such persons, and any documents or property such persons used, consulted or considered as a basis of their conclusions, findings or opinions.

32.     Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment.

33.     Documents that support Defendant's defenses in this lawsuit.

34.     Documents reviewed, relied upon, or referenced by Defendant in responding to Plaintiff's Interrogatories to Defendant.

35.     A floorplan of store 3035 as it was configured from January through July 2017.

Respectfully submitted,

CORREIA & PUTH, PLLC


*/s/ Linda M. Correia*
Linda M. Correia (D.C. Bar No. 435027)
Roshni C. Shikari (D.C. Bar No. 1045298)
1400 16th Street NW, Suite 450
Washington, DC 20036
Tel: (202) 602-6500
lcorreia@correiaputh.com
rshikari@correiaputh.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July 2018, a true and accurate copy of the

foregoing Plaintiff Lofland's First Requests for Production of Documents was served by certified

mail to:

Wal-Mart Stores East, LP and Wal-Mart Associates, Inc.
c/o CT Corporation System
1015 15th St NW, Suite 1000
Washington, DC 20005

Brian Brooks
1112 Eastern Avenue, NE, Apartment 102
Washington, DC 20019

*/s/ Linda M. Correia*